GREen, J.
delivered the opinion of the court.
•The plaintiffs below recovered a judgment against Martin St. John before J. Barkley, a justice of the peace for Warren county, for $18 20. Barkley resigned his office, and the papers were filed in the office of the clerk of the county court, *525 as the law directs. An execution on said judgment was issued, and came to the hands of Yance, who collected the money, and paid it over to A. Stone, who claimed to be entitled thereto. Whereupon Campbell and Shackelford gave notice, and moved for judgment against Yance, before Nathan Neely, a justice of the peace; — who gave judgment for the plaintiffs. Prom this judgment, the defendant appealed to the circuit court, where said judgment was affirmed, and he appealed to this court. The principal ground of defence relied on, is, that Shackelford, one of the partners, sold and transferred the judgment to John Wood, now deceased, and that said Stone, received the money from Yance, as part of his distributive share of Wood’s estate.
It is in proof that Shackelford sold this judgment to Wood, for corn, and it is insisted, that as the firm were dealers in dry goods, in Woodbury, such misapplication of the effects of the firm, was a fraud upon his co-partner, and that Wood derived no title to this judgment, by such purchase. On the other hand, it is alledged that the partners owned horses, and that the purchase of corn was proper to feed them; and that if it should appear that the corn was applied,to Shackelford’s private use, yet there is ho evidence, Wood knew it was so intended, and unless he had knowledge of such misapplication he obtained a good right to the said judgment.
Martin St. John, (the defendant in the execution) proves that Shackelford told him, that he had sold the judgment to Wood for corn, that he needed corn, and must have it. On further examination, the witness stated, Shackelford said, we needed corn. The witness understood from Shackelford that they had horses which they had bought to take off.
H. D. McBroom pi’oved, that Campbell boarded with him all the time the parties did business in Woodbury; that when Campbell first came to Woodbury, he had a horse, which he *526 kept for six months, and then sold him. Shackelford had a family and lived about two miles from town. The firm had no horses, that witness ever knew of, and thinks he would have known it if they had owned any. Upon this proof, we think the purchase of the corn by Shackelford, was for his own private purposes; and that, as it was not within the scope of the partnership to deal in corn, Wood is chargeable with knowledge that in transferring this judgment to him for corn, Shack-elford was misapplying the effects of the partnership. Such application of partnership effects, to the private use of one partneí-, is a fraud upon the other partners, and the party dealing with partner with a knowledge of. the misapplication, can claim no benefit from such contract. Story on Part. 208.
It is true that if the firm had owned horses, and the purchase of corn for the use of the firm, had been within the scope of their dealing, a party might deal with one partner in corn, and receive therefor partnership effects, although such corn were actually used for the private purposes of such partner; if the person so dealing were ignorant of the purpose of such partner, to apply the corn to his own use. But we do not think this record presents such a case. The plaintiffs proved by McBroom with whom Campbell boarded in Woodbury, that they did not deal in horses, and consequently they had no use for corn. It is said this is a negative witness, because he says^ he never knew of the firm owning any horse; but when he states he lived in the village of Woodbury, where the firm did business; that one of the partners boarded with him all the time of the partnership, and that he thinks if they had owned horses, he would have known it, he proves, so many affirmative facts, that we are authorized to infer the firm did not own horses.
On the other hand, there is no proof that the partners owned any horses. St. John says, Shackelford said they needed *527 corn, and the witness understood from Shackelford, that they had horses théy had bought to take off. This is no proof that the firm owned horses. It is a mere hearsay statement of the witness, as to what Shackelford told him. If the fact had been so, there would have been no difficulty of proving it; but no witness is examined as to his knowledge of the fact, except McBroom, and he disproves it.
2. It is said that the plaintiff in error is only a deputy sheriff, and that he is not liable to the plaintiffs below, but is liable to his principal only; and to support this position, the case of Rose vs. Lane, 3 Humph. R. 208, is referred to, and relied on.
That was an action against a deputy sheriff for failing to use due dilligence in the collection of a debt for which he had given his receipt. The court said incidentally, that for misconduct in his official acts, a deputy sheriff is liable to his principal only , but in that case he had taken on himself an agency, and therefore, an action might be maintained against him for negligence, whereby the party for whom he became agent, sustained a loss. But the present case, is of a very different character from the class of cases, to which the observation in Rose vs. Lane, refers. This is a motion against the deputy sheriff for money collected by him, by virtue of an execution. Such mtotionis expressly authorized by the act of 1829, ch. 41, sec. 2, C. & N. 670, to be made in the circuit court of the county where the defendant resides. And the act of 1835, ch. 17, sec. 4, authorizes a judgment by motion, before a justice of the peace against any officer into whose hands an execution may come &e. &c.
We think there is no error in the record, and affirm the judgment.